IN THE CIRCUIT COURT FOR
BALTIMORE CITY, MARYLAND

DARREN DONOVAN
8667 Castlemill Circle
Nottingham, MD 21236

    *Plaintiff*,

v.

ALFRED HOSPITALITY, LLC
5520 Muncaster Mill Road
Rockville, MD 20855

    Serve:  Ashish Alfred
                5520 Muncaster Mill Road
                Rockville, MD 20855
                *Registered Agent*

    *Defendant.*

Civil Action No.: C-24-CV-24-000382

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Darren Donovan ("**Plaintiff**"), by and through his attorney, Lauren E. Thomas of the Employment Law Center of Maryland, alleges and states as follows:

### JURISDICTION

1. This Court has jurisdiction over this civil action arising under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("**FLSA**").

### VENUE

2. Venue is proper in this county under Md. Code, Cts. & Jud. Proc. § 6-201(a), in that:

    a. the unlawful employment practice was committed in Baltimore City, Maryland;

    b. the relevant employment records are maintained in Baltimore City, Maryland;

1

    c. the aggrieved person would have worked in Baltimore City, Maryland but for the alleged unlawful employment practice; and

    d. there is no other county that has substantial connection to the claim.

## PLAINTIFF

3. Plaintiff resides in Nottingham, Maryland.

4. Plaintiff was an employee of Defendant, Alfred Hospitality, LLC ("**Defendant**"), as defined by 29 U.S.C. § 203(e)(1).

## DEFENDANT

5. Defendant is a Maryland corporation.

6. Defendant's principal office is located in Rockville, Maryland.

7. Defendant maintains restaurants in Baltimore City, Maryland.

8. Defendant does business in Baltimore City, Maryland.

9. Defendant is an employer, as defined by 29 U.S.C. § 203.

## FACTS

10. Defendant hired Plaintiff as an Executive Sous Chef for Duck Duck Goose ("**DDG**") and No Way Rose ("**NWR**") on August 1, 2022.

11. Plaintiff's duties as Executive Sous Chef for DDG and NWR included acting as the Head Culinary Chef/Officer for DDG and NWR, supervising all back of house employees, performing scheduling, ordering, running the dinner and lunch services, and attending manager meetings and BEO planning meetings.

12. Plaintiff was responsible for organizing, managing, and taking care of the needs of staff, along with being responsible for all food preparation, plating, and all aspects of health and fire code safety, including maintaining, repairing, and reporting any issues present.

13. On or about September 9, 2022, Plaintiff's paycheck, along with almost every paycheck for every employee of Defendant's three restaurants, was returned as nonsufficient funds.

14. It took Defendant several days to pay its employees for the paycheck owed on September 9, 2022.

15. On or about October 12, 2022, Plaintiff emailed Phellip Fonseca ("**Fonseca**"), Human Resources Officer, and Rani Singh ("**Singh**"), Operations Manager, about questions Plaintiff had received from staff that he managed about staff members not being allowed to access or view their paystubs.

16. Fonseca told Plaintiff that Singh needed more time to create the paystubs.

17. On or about October 15, 2022, Plaintiff sent an email to Singh about staff issues with paychecks including not having access to paystubs, and paychecks not being accepted by banks because of poor formatting and distribution methods by Defendant.

18. Singh failed to respond to Plaintiff's email.

19. On or about October 18, 2022, Plaintiff, on behalf of staff that he directly managed, reported additional payroll issues that had been brought to his attention.

20. Plaintiff, via email, asked Singh and Defendant's ownership to address the issues that Plaintiff had reported, including, but not limited to, Defendant failing to take out federal taxes for one of its employees.

21. Plaintiff was then incorrectly told by Fonseca and Singh that it was the employee's fault and that there was nothing Defendant could do to correct the employee's wages.

22.     On or about October 19, 2022, Plaintiff emailed Plante, Fonseca, and Singh, after employees approached him about their paychecks not being accepted or being able to be cashed because of nonsufficient funds.

23.     Plaintiff told Plante, Fonseca, and Singh that these employees were experiencing extreme difficulties in obtaining their payments from Defendant and recommended that upper management come up with a solution to resolve this issue so that Defendant's staff could receive payment and receive it in a timely manner.

24.     Plaintiff requested that a response be given by the next scheduled pay date, October 28, 2022, so as to ensure Defendant staff would be paid on that day.

25.     Plaintiff never received a response from management.

26.     On or about October 28, 2022, Plaintiff sent a follow up email to his October 19, 2022, email, in which Plaintiff expressed his disappointment in Defendant's executives' unwillingness to aid or assist its staff in ensuring that they are paid and paid in a timely manner.

27.     In the October 28, 2022, email, Plaintiff once again requested that Defendant's management discuss this matter and come up with potential ideas to remedy the situation.

28.     Approximately 30 minutes after sending his follow up email, Plaintiff received a phone call from Alfred.

29.     Alfred was irate and aggressive towards Plaintiff for making these complaints about employees not being paid.

30.     During that phone call, Alfred told Plaintiff that "if [he] didn't like working there [he] could go and [Alfred] would let [Plaintiff] split no problem."

31.     Plaintiff stated that the paycheck issues still had not been addressed, but Alfred did not want to discuss it.

32. Alfred made it clear that unless Plaintiff agreed with him and stopped pressing about employee wage and payment issues, that Plaintiff's employment would be at risk.

33. On or about the morning of October 29, 2022, Plaintiff wrote an email to his direct supervisor, Plante, addressing the phone call by Alfred the day before. In this email, Plaintiff made a complaint as to the actions and attitude of Alfred, including Alfred's dismissal of Plaintiff's complaints about the issues with employee wages and payment.

34. Plaintiff expressly stated that he believed that he would be retaliated against for making these complaints to Defendant's upper management.

35. Plaintiff then reminded Plante that any such retaliation or adverse actions towards his employment would be in violation of federal and state laws.

36. Rather than investigate Plaintiff's complaint, Defendant terminated Plaintiff's employment on October 30, 2022.

37. Defendant stated that the separation was due to Plaintiff being "not a compatible fit."

38. Prior to being terminated, Plaintiff had never received a performance evaluation and did not have any disciplinary actions.

## COUNT I
### Retaliation
### Fair Labor Standards Act of 1938
### 29 U.S.C.A. § 201 *et seq*.

39. Plaintiff repeats and realleges paragraphs 1 through 33 hereof, as if fully set forth herein.

40. Under the Fair Labor Standards Act of 1938 ("**FLSA**"), it is unlawful for an employer "to discharge or in any other manner discriminate against any employee because such

employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3).

41. During his employment, Plaintiff, along with other employees, suffered difficulties with getting their paycheck from Defendant.

42. Other employees of Defendant would come to Plaintiff with concerns about their inability to cash their paychecks from Defendant because of lack of funds, inappropriate payment methods, and non-access to paystubs or other record-keeping documents.

43. On or about October 19, 2022, Plaintiff emailed Plante, Fonseca, and Singh, and made a complaint that employees were having difficulties with their paychecks not being accepted or being able to be cashed because of nonsufficient funds.

44. On or about October 28, 2022, after not receiving a response from Defendant's management about his complaints about the employee paychecks, Plaintiff once again made a complaint and requested that Defendant's management discuss this matter and come up with potential ideas to remedy the situation.

45. On or about October 28, 2022, right after making his second complaint, Plaintiff received an angry phone call from Alfred, who became aggressive towards Plaintiff for making his complaints about employees not being paid.

46. During the phone call, Alfred made it clear that unless Plaintiff agreed with him and stopped pressing about employee wage and payment issues, that Plaintiff's employment would be at risk.

47. On or about the morning of October 29, 2022, Plaintiff made a formal written complaint to his direct supervisor, Plante, as to Alfred's attitude and general dismissal of Plaintiff's complaints about the issues with employee wages and payment.

48. Plaintiff expressly stated to Plante that he believed that he would be retaliated against for making these complaints to Defendant's upper management.

49. On or about October 30, 2022, Defendant terminated Plaintiff's employment.

50. Prior to his termination, Plaintiff did not have any disciplinary actions or negative performance evaluations.

51. Plaintiff suffered damages as a result of Defendant's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

52. Defendant intentionally violated Plaintiff's rights under the FLSA, 29 U.S.C. § 201 *et seq.*, with actual malice, and, as a result, is liable for punitive damages.

## COUNT II
## Wrongful Discharge (Tort)

53. Plaintiff repeats and realleges paragraphs 1 through 52 hereof, as if fully set forth herein.

54. The tort of wrongful discharge "was created so that the prospect of a remediless employee would not undercut the policies and goals that other laws sought to further." *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 612 (Md. 1989).

55. Further, "an employee who has been discharged in a manner that contravenes public policy may maintain a cause of action for abusive or wrongful discharge against his former employer." *Wholey v. Sears*, 370 Md. 38, 49 (Md. 2002) (internal quotation marks omitted).

56. Under the Maryland Wage and Hour Law ("**MWHL**"), it is unlawful for an employer to "take adverse action against an employee because the employee . . . makes a complaint that the employee has not been paid in accordance with this subtitle." Md. Code, Lab. & Empl. § 3-428(b)(1)(iii).

7

57. Under the MWHL, the term "complaint" means "a written or oral complaint, claim, or assertion of right by an employee, regarding the payment of wages under this subtitle, that is made to . . . the employer or a supervisor, manager, or foreman employed by the employer whether it is made through the employer's internal grievance process or otherwise." Md. Code, Lab. & Empl. § 3-428(a).

58. However, the MWHL does not provide a private cause of action for aggrieved employees against their employers for discharging them for making complaints about unlawful wages practices.

59. Therefore, no statutory remedy for MWHL retaliation is available to Plaintiff.

60. During his employment, Plaintiff, along with other employees, suffered difficulties with getting their paycheck from Defendant.

61. On or about October 19, 2022, Plaintiff emailed Defendant's management and made a complaint that employees were having difficulties with their paychecks not being accepted.

62. On or about October 28, 2022, after not receiving a response from Defendant's management about his complaints about the employee paychecks, Plaintiff once again made a complaint.

63. On or about October 28, 2022, right after making his second complaint, Plaintiff received an angry phone call from Alfred, who became aggressive towards Plaintiff for making his complaints.

64. During the phone call, Alfred made it clear that unless Plaintiff agreed with him and stopped pressing about employee wage and payment issues that Plaintiff's employment would be at risk.

65. On or about the morning of October 29, 2022, Plaintiff made a formal written complaint to his direct supervisor, Plante, as to Alfred's attitude and general dismissal of Plaintiff's complaints about the issues with employee wages and payment.

66. Plaintiff expressly stated to Plante that he believed that he would be retaliated against for making these complaints to Defendant's management.

67. On or about October 30, 2022, Defendant terminated Plaintiff's employment.

68. Prior to his termination, Plaintiff did not have any disciplinary actions or negative performance evaluations.

69. Plaintiff suffered damages as a result of Defendant's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

70. Defendant intentionally violated Plaintiff's rights under the MWHL, Md. Code, Lab. & Empl. § 3-401 *et seq.*, with actual malice, and, as a result, is liable for punitive damages.

**PRAYER FOR RELIEF**
**(as to all counts)**

**WHEREFORE**, Plaintiff respectfully requests a judgement in excess of seventy-five thousand dollars (**$75,000.00**), to include:

a. Accept jurisdiction over this matter;

b. Award Plaintiff for past and future loss of wages and benefits, plus interest;

c. Award Plaintiff liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

d. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

e. Award Plaintiff compensatory damages;

f. Award Plaintiff punitive damages; and,

g.  Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial in this action.

Respectfully submitted,

*Lauren E. Thomas*
_____
Lauren E. Thomas
AIS No.: 1712140222
Employment Law Center of Maryland, Inc.
5 Hillcrest Dr, Ste B203
Frederick, MD 21703
(240) 384-5705 (main)
(240) 835-5590 (direct)
lthomas@elcmd.org

*Counsel for Plaintiff Darren Donovan*