IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| DARREN DONOVAN, | * |
| Plaintiff | * |
| v. | * Civ. No.: MJM-24-2087 |
| ALFRED HOSPITALITY, LLC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This matter is before the Court on Alfred Hospitality LLC's ("Defendant") Motion to Dismiss. (ECF 6). The motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall deny the motion as to Count I and grant the motion as to Count II.

**I.      FACTUAL BACKGROUND**

Defendant Alfred Hospitality LLC ("Defendant") is a Maryland company. Compl. ¶ 5. On or about August 1, 2022, Defendant hired plaintiff Darren Donovan ("Plaintiff") as an Executive Sous Chef for restaurants Duck Duck Goose ("DDG") and No Way Rose ("NWR"), subsidiaries owned by Defendant. *Id*. ¶ 10. Plaintiff's job description included the supervision of all back-of-house employees, scheduling, ordering, running the dinner and lunch services, attending manager meetings, food preparation, plating, managing all aspects of compliance with the health and fire code, and reporting any issues. *Id*. ¶¶ 11–12.

1

On or about September 9, 2022, Plaintiff's paycheck, along with almost every paycheck for every employee of Defendant's three restaurants, was returned for non-sufficient funds. *Id*. ¶ 13. According to Plaintiff, it took Defendant "several days" to pay its employees for the paycheck owed on September 9. *Id*. ¶ 14.

On or about October 12, 2022, Plaintiff emailed Human Resources Officer Phellip Fonseca and Operations Manager Rani Singh about questions he received from staff members he managed about not being allowed to access or view their paystubs. *Id*. ¶ 15. In response to his email, Fonseca told Plaintiff that Singh needed more time to create the paystubs. *Id*. ¶ 16. On or about October 15, 2022, Plaintiff sent another email to Singh about the staff's issues with paychecks, including lacking access to paystubs and paychecks not being accepted by banks because of Defendant's poor formatting and distribution methods, to which Singh failed to respond. *Id*. ¶¶ 17–18.

On or about October 18, 2022, Plaintiff sent an email reporting additional payroll issues experienced by his staff members. In the email, Plaintiff requested that ownership address the issues that Plaintiff had been reporting, including, but not limited to, Defendant failing to take out federal taxes for one of its employees. *Id*. ¶¶ 19–20. In response, Fonseca and Singh told Plaintiff that it was the employee's fault and that there was nothing Defendant could do to correct the employee's wages. *Id*. ¶ 21.

On or about October 19, 2022, Plaintiff emailed Plante (his direct supervisor), Fonseca, and Singh after employees approached him about their paychecks being rejected for non-sufficient funds. In the email, Plaintiff requested that management come up with a solution to resolve this issue so that Defendant's staff "could receive payment and receive it in a timely manner." *Id*. ¶¶ 22–23. Plaintiff request a response by the next scheduled pay date, October 28, 2022, to ensure payment of the staff, but no response was given. *Id*. ¶ 25.

On or about October 28, 2022, Plaintiff sent a follow-up email reiterating his concerns and expressing his disappointment in Defendant's unwillingness to ensure that staff members were "paid and paid in a timely manner." *Id*. ¶ 26. About 30 minutes after sending this email, Plaintiff received a phone call from "Alfred."[1] *Id*. ¶ 28. Plaintiff alleges that Alfred was "irate and aggressive" towards Plaintiff for making "complaints about employees not being paid[,]" and Alfred told Plaintiff that "if [he] didn't like working there [he] could go and [Alfred] would let [Plaintiff] split no problem." *Id*. ¶¶ 28–30. In response, Plaintiff attempted to discuss paycheck issues, but Alfred did not want to discuss it. *Id*. ¶ 31. Alfred was clear that unless Plaintiff agreed to stop pressing the wage and payment issues, Plaintiff's employment would be at risk. *Id*. ¶ 32.

On or about October 29, 2022, Plaintiff emailed Plante about the phone call he had with Alfred the day before. In the email, Plaintiff made a complaint about Alfred's behavior and attitude, including Alfred's dismissal of Plaintiff's employee wage and payment concerns. *Id*. ¶ 33. Plaintiff stated that he thought he would be retaliated against for making these complaints. *Id*. ¶ 34. Plaintiff noted for Plante that any such retaliation or adverse action toward his employment would be in violation of federal and state law. *Id*. ¶ 35.

On October 30, 2022, Defendant terminated Plaintiff's employment, stating that Plaintiff was "not a compatible fit." *Id*. ¶ 37. Plaintiff alleges that prior to termination, he never received a performance evaluation and did not have any disciplinary record. *Id*. ¶ 38.

## II. STANDARD OF REVIEW

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the

---

[1] The Court presumes that "Alfred" is an owner of Defendant.

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Pursuant to Rule 12(b)(6), a defendant may file a motion to dismiss a complaint for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III. DISCUSSION

#### A. Count I – FLSA Retaliation

In Count I of the Complaint, Plaintiff alleges that the termination of his employment on October 30, 2022, constituted unlawful retaliation under the Fair Labor Standards Act of 1938 ("FLSA").

Congress enacted the FLSA "to protect all covered workers from substandard wages[,] . . . oppressive working hours, [and] 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). FLSA has two core provisions. The first requires employers pay workers a minimum wage. 29 U.S.C. § 206(a). The second requires employers to compensate each employee "at a rate not less than one and one-half times the regular rate" for all hours an employee works in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1). "[W]here the statutory language permits, [courts] are instructed to read the FLSA to effect its remedial purposes." *Minor v. Bostwick*, 669 F.3d. 428, 437 (4th Cir. 2012) (cleaned up). Accordingly, the FLSA should be construed "liberally, recognizing that broad coverage is essential' to accomplish the statute's goals." *Pizzella v. Peters*, 410 F. Supp. 3d 756, 766 (D. Md. 2019); *see also Minor*, 669 F. 3d at 437 ("[T]he FLSA must not be interpreted or applied in a narrow, grudging manner.").

The FLSA includes an anti-retaliation provision that makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). Thus, a discharged plaintiff-employee "who is not eligible for protection under the FLSA's minimum wage or overtime provisions nonetheless may state a claim under

the retaliation provision, *provided that the employee files a good-faith complaint, based on a reasonable belief that she is entitled to minimum wage or overtime compensation . . . .*" *Morrison v. Crabs on Deck, LLC*, Civ. No. PWG-17-3347, 2018 WL 5113671, at *4 (D. Md. Oct. 19, 2018) (quoting *Hardison v. Healthcare Training Sols., LLC*, Civ. No. PWG-15-3287, 2016 WL 4376725, at *4 (D. Md. Aug. 17, 2016)) (emphasis in *Morrison*). *See also Randolph v. ADT Sec. Servs., Inc.*, 701 F. Supp. 2d 740, 746 (D. Md. 2010) ("Plaintiffs have properly alleged that they engaged in an activity protected by the FLSA by filing a good-faith complaint with [the Maryland Department of Labor, Licensing and Regulation]."). A complaint is considered "filed" when "a reasonable, objective person would have understood the employee" to have "*put the employer on notice that [the] employee is asserting statutory rights under the [Act]*." *Hardison*, 2016 WL 4376725, at *3 (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)) (emphasis in *Hardison*).

To assert a prima facie claim of retaliation under the FLSA, a plaintiff must show that: "(1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008). Intracompany complaints made by an employee to an employer are "considered [to be] protected activity within the means of [the FLSA's] antiretaliation provision." *Minor*, 669 F.3d at 438. Additionally, a FLSA complaint may be oral as well as written. K*asten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).

Defendant argues that Plaintiff's FLSA retaliation claim must be dismissed because Complaint fails to allege that he engaged in a protected activity under the FLSA. The Court disagrees.

Plaintiff alleges in his Complaint that he complained to managers about payment issues several times, either orally or through email. The first complaint concerned employees' lack of access to their paystubs. Compl. ¶ 15. The second complaint concerned "additional payroll issues that had been brought to [Plaintiff's] attention[,] *id.* ¶ 19, "including but not limited to" Defendant's failure to withhold federal taxes for one employee, *id.* ¶ 20. Plaintiff's third complaint concerned multiple employees' paychecks "not being accepted or being able to be cashed because of nonsufficient funds." *Id.* ¶ 22. Further, Plaintiff "recommended that upper management come up with a solution to resolve this issue so that Defendant's staff could receive payment and receive it in a timely manner." *Id.* ¶ 23. Similarly, Plaintiff's fourth complaint concerned upper management's "unwillingness to aid or assist its staff in ensuring that they are paid and paid in a timely manner." *Id.* ¶ 26.

Drawing all reasonable inferences in Plaintiff's favor, his third and fourth complaints concerned, at least in part, Defendant's failure to compensate its employees at all and therefore plausibly related to rights secured by the FLSA—specifically, the right to be paid a minimum wage. Although there is no allegation that employees did not receive paychecks, Plaintiff alleges multiple instances in which the paychecks were not accepted for payment. "[A]cceptance of a check does not operate as payment of a debt, unless the check is itself paid." *Cleve v. Craven Chemical Co.*, 18 F.2d 711, 712 (4th Cir. 1927); *see also Barnhill v. Johnson*, 503 U.S. 393, 394–95 (1992) ("[A] transfer made by check is deemed to occur on the date the check is honored[.]"). Plaintiff's complaints about employees' paychecks being rejected for insufficient funds, *id.* ¶ 22, and Defendant failing to ensure that its employees were paid for time worked, *id.* ¶¶ 23, 26, alleged conduct proscribed by the FLSA—the failure to pay a minimum wage. *See Fisher v. BAE Sys. Tech. Sols. & Servs.*, No. 8:23-cv-00225-AAQ, 2024 WL 3455003, at *15 (D. Md. July 17, 2024)

7

(protected activity does not require plaintiff to "have 'invoke[d] the statute by name or "employ[ed] any magic words"'" to engage in protected activity under the FLSA) (quoting *Bouchard v. Summit Ridge Energy, LLC*, No. 1:23cv1573 (DJN), at *5 (E.D. Va. Apr. 3, 2024)). Accepting the facts alleged in the Complaint as true, it is plausible that Plaintiff reasonably understood his complaints to assert entitlement to a minimum wage, as secured by the FLSA.

Furthermore, "a reasonable, objective person" would have understood Plaintiff to have put Defendant on notice that Plaintiff's complaints asserted rights to a minimum wage under the FLSA. *Hardison*, 2016 WL 4376725, at *3 (quoting *Kasten*, 563 U.S. at 14). According to the Complaint, Plaintiff's third and fourth complaints, each made by email to managers, were about employees both not receiving payment and not receiving it timely. *Id.* ¶¶ 23, 26. The fourth complaint apparently prompted a phone call from Alfred, during which "Alfred was irate and aggressive towards Plaintiff for making these *complaints about employees not being paid*." *Id.* ¶ 29 (emphasis added). Drawing reasonable inferences in Plaintiff's favor, Defendant actually understood Plaintiff's complaints to assert employees' entitlement to payment—a right secured by the FLSA's minimum wage provision. Moreover, Plaintiff specifically invoked the protection of federal law when, after his phone call with Alfred, Plaintiff told his supervisor that he believed he would be retaliated against for making complaints. *Id.* ¶ 35. Thus, the Court finds that the Complaint sufficiently alleges Plaintiff's engagement in FLSA-protected activity and reasonable notice to Defendant of this protected activity.[2]

---

[2] This case is distinguishable from *Hardison*. The plaintiff in *Hardison* alleged that she made complaints about being "paid incorrectly" when she "initially received only $425" after having worked for 24 hours for an hourly wage of $21. 2016 WL 4376725, at *2. After her complaint, she received an additional payment of $47.50, which still fell short of the amount to which she believed she was entitled. *Id.* She was terminated after lodging another complaint. *Id.* Judge Grimm found that the plaintiff's FLSA retaliation claim was "subject to dismissal" because her complaint left "unclear whether she reasonably believed that she was entitled to minimum wages when she complained to Defendants." *Id.* at *4. Because Plaintiff was compensated for work she performed and only appeared to complain that she was not compensated at what

The Complaint also alleges a plausible causal link between Plaintiff's protected activity and the termination of his employment. According to the Complaint, during Plaintiff's phone call with Alfred on October 28, 2022, "Alfred made it clear that unless Plaintiff agreed with him and stopped pressing about employee wage and payment issues, that Plaintiff's employment would be at risk." *Id.* ¶ 32. On October 29, Plaintiff sent his supervisor an email complaining about Alfred's dismissal of the wage and payment issues and voicing concern that he would be retaliated against. *Id.* ¶¶ 33–34. Finally, on October 30, Defendant terminated Plaintiff's employment. *Id.* ¶ 36. Although Defendant offered lack of compatibility as a vague justification for the termination, *id.* ¶ 37, Plaintiff had no disciplinary record. *id.* ¶ 38. These facts are more than adequate to allege causal connection between Plaintiff's protected activity and Defendant's adverse action.

In sum, the Court finds the Complaint to state a plausible claim for retaliation under the FLSA. Defendant's motion to dismiss shall be denied as to Count I.

### B. Count II – Wrongful Discharge

In Count II of the Complaint, Plaintiff brings a claim for wrongful discharge under Maryland common law. This common law tort "was created so that the prospect of a remediless employee would not undercut the policies and goals that other laws sought to further." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 183 (Md. 1989). To state a plausible claim of wrongful discharge, the plaintiff-employee must allege that (1) he was discharged; (2) the basis for his discharge violated a clear mandate of public policy; and (3) there is a nexus between his conduct

---

she understood to be her hourly rate, it was "unclear whether [the plaintiff] asserted that Defendants failed to pay her minimum wages, an assertion that would invoke FLSA protection, or that they simply failed to pay her correctly, which only would be an assertion of contractual rights." *Id.* In contrast, the Complaint in the instant case is clear that Plaintiff's complaints to Defendant's management reflected, in part, concerns that Defendant failed to pay its employees at all.

9

and the employer's decision to discharge him. *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002).

Plaintiff relies on a repealed version of the Maryland Wage and Hour Law ("MWHL") for a public policy mandate he claims was violated by his termination. That version of the MWHL supplied a clear public policy mandate against firing employees for complaining that they were not being paid a minimum wage or receiving overtime compensation earned. *See Randolph*, 701 F. Supp. 2d at 747. At the time his Complaint was filed in this matter in May 2024, the MWHL provided that it was unlawful for an employer to "take adverse action against an employee because the employee . . . makes a complaint that the employee has not been paid in accordance with this subtitle[,]" Md. Code, Lab. & Empl. § 3-428(b)(1)(iii) (2023), but it did not provide a private cause of action for employees aggrieved by such retaliatory practices. *Morrison*, 2018 WL 5113671, at *4.

On July 1, 2024, after the Complaint was filed, the Maryland General Assembly's amendment of the MWHL went into effect, creating a new remedial scheme.[3] Employers are forbidden from "discharg[ing] . . . an employee because the employee . . . makes a complaint . . . to the employer . . . regarding a violation" of certain provisions in Title 3 of the Labor and Employment Article. Md. Code Ann., Lab. & Empl. § 3-105(b). The covered provisions include those that require employers to pay the minimum wage. *See id.* § 3-413. The new statutory scheme allows individuals aggrieved by retaliation to file a complaint with the Commissioner of Labor and Industry. *Id.* §§ 3-101(b), 3-105(c). The Commissioner is then mandated to conduct an investigation and attempt to resolve the matter through mediation. *Id.* § 3-105(d)(1). The Commissioner may issue an order to an employer to remedy any violations if the matter is not

---

[3] *See* Maryland General Assembly, Legislation, available at https://perma.cc/4DU4-EWQX (last visited Mar. 23, 2025).

10

resolved informally. *Id*. § 3-105(d)(2). If the employer fails to comply with the Commissioner's order, a civil enforcement action may be instituted by the employee, by the Commissioner, or by the Attorney General. *Id*. § 3-105(e)(2). If the employee prevails, he or she may recover three times the value of lost wages, punitive damages, reasonable attorneys' fees, and/or injunctive relief. *Id*. § 3-105(e)(3).

Defendant argues that the existence of the new remedial statutory scheme in § 3-105 bars Plaintiff from recovering for wrongful discharge under Maryland common law. The Court agrees. A common-law wrongful discharge claim "is inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Makovi*, 561 A.2d at 180. The tort "is unavailable when the statute relied upon as the source of public policy provides its own remedial scheme for vindication of that policy." *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 615 (D. Md. 2008). The termination of Plaintiff's employment, which he contends violated public policy, may now be vindicated under § 3-105. Because § 3-105 governs the procedure for vindicating Plaintiff's alleged wrongful discharge and provides the remedy for it, that statute applies to Plaintiff's case under Maryland law. *See Allstate Ins. Co.*, 829 A.2d at, 618. ("a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective"). Thus, the availability of a statutory remedy for the Maryland public policy violation alleged in the Complaint precludes Plaintiff's common law claim for wrongful discharge.

Accordingly, Plaintiff's wrongful discharge claim must be dismissed. Defendant's motion to dismiss shall be granted as to Count II.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be denied as to Count I and granted as to Count II.

A separate Order will follow.

 3/31/25                                                              /S/
Date                                                        Matthew J. Maddox
                                                            United States District Judge